John B. KING, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 732–88 C.

United States Claims Court.

March 13, 1990.

Edward G. Modell, Washington, D.C., for plaintiff.

James M. Kinsella, Washington, D.C., with whom was Stuart M. Gerson, Asst. Atty. Gen.

## OPINION

RADER, Judge.

The United States Navy (the Navy) required John B. King (plaintiff) to retire from active duty when the fiscal year (FY) 1984 selection board refused his promotion. Plaintiff subsequently filed an application with the Board for the Correction of Naval Records (BCNR) seeking reinstatement and back pay. The BCNR denied plaintiff's application on October 20, 1988.

Plaintiff asks this court to declare the BCNR decision arbitrary, capricious, and unsupported by substantial evidence. Plaintiff contends that his record before the BCNR contained improper references which prejudiced his chances for promotion. Plaintiff seeks reinstatement to active duty, expungement of his previous promotion rejections, and back pay.

Defendant moves for summary judgment under RUSCC 56. Plaintiff opposes this motion and cross-moves for summary judgment. After oral argument, this court grants defendant's motion and denies plaintiff's cross-motion.

## FACTS

The Navy commissioned plaintiff on June 6, 1962. He received regular promotions to lieutenant (j.g.), lieutenant, and lieutenant commander. In late 1973, the Navy assigned plaintiff to the USS OKINAWA. Captain Salin, the commanding officer, completed two fitness reports on plaintiff before Captain Moore took over the USS OKINAWA in November 1974.

The new commanding officer soon requested plaintiff's detachment for cause. To justify the request, Captain Moore prepared a fitness report covering the period November 30 through December 23, 1974. The Navy denied Captain Moore's request for detachment and, therefore, did not include the fitness report in plaintiff's record. Nonetheless, plaintiff received an assignment for temporary additional duty to the staff of the Commander Amphibious Squadron (COMPHIBRON) Seven in the United States on December 25, 1974. The Navy's records continued to reflect plaintiff's assignment to the OKINAWA until June 27, 1975.

The reporting officer at COMPHIBRON Seven submitted two fitness reports on plaintiff covering the period December 24, 1974 through June 27, 1975. Nine months after plaintiff's absence from the OKINAWA, Captain Moore submitted an adverse fitness report on plaintiff's performance. Captain Moore claimed to base the report on close observation of plaintiff during a seven-month period. In fact, he did not observe plaintiff's performance during the last six months of the reporting period.

In 1976, the FY 1977 selection board did not promote plaintiff to the rank of commander. Plaintiff petitioned the BCNR to remove Captain Moore's 1975 report from his record. After a hearing at which the plaintiff appeared *pro se* and testified under oath, the BCNR recommended denial of plaintiff's request. The Secretary of the Navy (Secretary) adopted this recommendation. The FY 1978, 1979, and 1980 selection boards did not promote plaintiff to commander.

On August 13, 1979, plaintiff filed suit in the United States Court of Claims, *King v. United States*, 618 F.2d 125, 222 Ct.Cl. 505 (1979), seeking removal of the adverse report as well as a promotion. The Court of Claims dismissed the suit because the court had no authority to award a promotion. On March 13, 1980, plaintiff again filed suit, this time in the United States District Court, seeking to expunge the 1975 fitness report. *King v. Pfeiffer*, No. 80–0658 (D.D.C. Mar. 13, 1980). The parties stipulated to a stay of proceedings pending a remand to the BCNR. During the pendency of the remand, the FY 1981 and 1982 selection boards denied plaintiff's promotion.

On April 21, 1981, the BCNR recommended correction of plaintiff's records. The Secretary ordered removal of the 1975 fitness report. The Secretary further ordered removal from plaintiff's record of any references to the earlier promotion denials.

On the basis of plaintiff's corrected records, the FY 1983 and 1984 boards considered him for promotion. The boards again declined to promote plaintiff. Due to two promotion denials, the Navy ordered plaintiff's retirement, effective July 1, 1983.

On June 30, 1986, plaintiff filed a new petition with the BCNR alleging that his inability to obtain a promotion resulted from a lack of relevant recent sea duty. According to plaintiff, this lack of sea duty was a consequence of the adverse 1975

fitness report which remained in plaintiff's record until 1981. In a subsequent letter to the Director of the BCNR, plaintiff identified six other fitness reports beginning May 1, 1976 through October 31, 1980, which contained references to plaintiff's previous promotion pass overs.[1] These references—all very flattering to plaintiff—remained in plaintiff's record after the 1981 order to expunge references to plaintiff's previous pass overs. Plaintiff believes these references were responsible for the selection boards' decisions in FY 1983 and 1984.

The BCNR denied plaintiff's petition for relief. The BCNR found the references improper, but not prejudicial to plaintiff's chances for promotion. The BCNR also concluded that it was unlikely plaintiff would have received sea duty assignments even absent the improper fitness report.

Plaintiff filed the present action in the United States Claims Court on December 19, 1988. Plaintiff contends that the October 20, 1988 BCNR decision was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and unsupported by substantial evidence. Plaintiff seeks reinstatement to active duty, expungement of his previous pass overs, and back pay. Both parties have moved for summary judgment.

## DISCUSSION

### Summary Judgment

■ When no material facts are in dispute, RUSCC 56 authorizes this court to resolve issues as a matter of law. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144 (Fed.Cir.1985). A movant for summary judgment has the burden of showing the absence of any genuine issue of material fact. *Id.* at 1146. The movant also can discharge its burden by demonstrating that the nonmoving party failed to establish some element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

When evaluating the merits of a summary judgment motion, this court must resolve reasonable factual disputes in favor of the nonmovant. *Auld*, 714 F.2d at 1146. Mere denials, speculation, or bald assertions do not create an evidentiary conflict sufficient to defeat a summary judgment motion. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984).

### Improper References Claim

■ This court must show deference when reviewing a BCNR decision. Consequently, this court may not declare a decision of the BCNR illegal unless it is arbitrary or capricious, contrary to law or regulation, or unsupported by substantial evidence. *Morrow v. United States*, 227 Ct.Cl. 290, 296, 647 F.2d 1099, 1102, *cert. denied*, 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981); *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979). Plaintiff has the burden of meeting this standard with "cogent and clearly convincing evidence." *Cooper v. United States*, 203 Ct.Cl. 300, 304 (1973). Further, plaintiff must overcome the presumption that military administrators "discharge their duties correctly, lawfully, and in good faith." *Sanders*, 594 F.2d at 813.

■ A promotion selection board must consider a military officer's service record on a "fair and equitable basis." *See* 10 U.S.C. § 8442(c) (1988). Secretaries of the military, acting through correction boards such as the BCNR, may "correct an error or remove an injustice" to ensure that a serviceman's record accurately portrays his military career. 10 U.S.C. § 1552 (1970); *Murphy v. United States*, 16 Cl.Ct. 385, 392 (1989). A correction board acts in violation of its mandate, and thus arbitrarily and capriciously, if it does not correct an injustice clearly presented in the record. *See Skaradowski v. United States*, 200 Ct.Cl. 488, 471 F.2d 627 (1975); *Duhon v.*

---

**1.** In addition, plaintiff identified these fitness reports in the District Court filing on January 14, 1987, *King v. Pfeiffer*, No. 80–0658 (D.D.C. Feb. 8, 1989). Pursuant to a stipulation, the parties dismissed the district court suit when the present action was filed.

*United States*, 198 Ct.Cl. 564, 461 F.2d 1278 (1972).

■ The inclusion of improper materials in an officer's record does not automatically render promotion pass overs arbitrary and capricious. *Hary v. United States*, 223 Ct.Cl. 10, 20, 618 F.2d 704, 709 (1980). Plaintiff must show both a material legal error or injustice and a connection between the error or injustice and the promotion rejection. The Navy bears the ultimate burden of persuasion, however, as to the harmlessness of any error. *Id.* 618 F.2d at 704; *Engels v. United States*, 230 Ct.Cl. 465, 469, 678 F.2d 173, 176 (1982).

This court cannot merely inquire into the sufficiency of evidence supporting the result reached by the BCNR, apart from any error. Rather, the court must ask whether the error itself had a substantial influence. If the court has grave doubts about the BCNR's findings, the decision cannot stand. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1946).

Plaintiff believes that the inclusion of improper statements in his record prejudiced his promotion opportunities. On May 26, 1981 the Secretary ordered removal of the 1975 adverse fitness report from plaintiff's record. The Secretary also directed, in pertinent part:

a. [T]he Petitioner's record shall be further corrected in such a way that his name will be placed before the next board to convene to consider officers of his category for promotion to the grade of commander as an officer who has not previously failed of selection for promotion to that grade.

. . . .

e. Any material or entries inconsistent with or relating to this order shall be removed or completely expunged from the Petitioner's record and no such entries or material shall be added to his record in the future.

■ Yet, the Navy did not exclude all material from plaintiff's record. After plaintiff was passed over in FY 1983 and 1984 and involuntarily retired, he filed another petition for relief with the BCNR. This petition identified six fitness reports considered by the FY 1983 and 1984 selection boards which contained references to prior pass overs for promotion.[2] On October 20, 1988, the BCNR again denied plaintiff's request for relief. The BCNR determined that these flattering references did not prejudice plaintiff's chances for promotion. Plaintiff considers this determination arbitrary and capricious.

Plaintiff has contended that the Navy's failure to remove improper references from his record constituted error and injustice. The Navy admitted at oral argument that it erred in failing to strike all improper references from plaintiff's record. The parties do not dispute that the Navy committed legal error. Defendant argued that the legal error was not material. Because the

---

2. The improper statements reviewed by the FY 1983 and 1984 selection boards contain the following comments:

May 1, 1976 to March 22, 1977—"I am unable to understand LCDR King's failure to selection to commander. Despite this deep professional disappointment, he has continued and improved upon his superior performance."
March 23, 1977 to April 30, 1978—"His demonstrated level of outstanding performance and personal accomplishment at this command support a strong recommendation for promotion to commander, particularly since he has not allowed previous failure of selection to influence his work or his attitude."
May 1, 1978 to August 29, 1978—"LCDR King's proven professional performance and continued dedication and effective service, even after failing selection, justify evaluating him in the accelerated promotion category."

August 30, 1978 to April 30, 1979—"Even though faced with frustrations in his personal career goals, he performs in the same genuinely dedicated, forthright, professional manner which has made him one of the most valuable and respected members of this command."
May 1, 1979 to April 30, 1980—"Because of his sustained superior performance he is evaluated in the accelerated promotion category though no longer in a group technically eligible for accelerated promotion."
May 1, 1980 to October 31, 1980—"Though no longer in a group technically eligible for accelerated promotion, he is evaluated in that category because he is truly a top one percenter."
Defendant's Brief, No. 732–88C, filed May 31, 1989, Appendix, at 6–18.

error was harmless, as discussed *infra,* defendant is correct that the error was not material. Thus, although showing an error, plaintiff did not show that error was material.

Plaintiff also did not demonstrate a causal nexus between the improper references and the FY 1983 and 1984 pass overs. The United States Court of Appeals for the Federal Circuit has enunciated a presumption that members of selection boards follow instructions and disregard any information not properly before them. *Bockoven v. Marsh,* 727 F.2d 1558, 1563 (Fed. Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); *Sanders,* 594 F.2d at 813. The Secretary of the Navy instructed the FY 1983 and 1984 selection boards "not to hold against an officer the fact that the officer had previously failed of selection for promotion." Defendant's Brief, No. 732–88C, filed May 31, 1989, Appendix (Def.App.), at 2–3. Further, the 1987 advisory opinion presented to the BCNR from the Navy Military Personnel Command expressed "confiden(ce) that the members do their best to follow the guidance provided by the Secretary of the Navy in his conveying precept to the board." Def.App., at 21.

Plaintiff has not presented any evidence to rebut the presumption that the BCNR followed the Secretary's directive.[3] Absent such evidence, this court must conclude that the board obeyed the Secretary's instructions. Thus, the presumption operates to show that the board obeyed the Secretary's instructions. The board, therefore, did not consider plaintiff's previous pass overs in their promotional calculations. The promotion board, according to the Secretary's orders, disregarded any references to those pass overs. Plaintiff does not show a connection between the improper references and his rejections for promotion. Thus, plaintiff has not established the causal nexus necessary for proving that BCNR acted arbitrarily and capriciously.

Furthermore, the Navy showed that the references were in fact harmless. The BCNR notes that the references, in context, aided plaintiff's promotional opportunities. These flattering references highlighted the quality of plaintiff's performance:

> August 30, 1978 to April 30, 1979—"Even though faced with frustrations in his personal career goals, he performs in the same genuinely dedicated, forthright, professional manner which has made him one of the most valuable and respected members of this command."

> May 1, 1979 to April 30, 1980—"Because of his sustained superior performance he is evaluated in the accelerated promotion category though no longer in a group technically eligible for accelerated promotion."

These references suggest that despite adversity, plaintiff performed in any exemplary manner. This record highlights plaintiff's good characteristics. These references did not deprive plaintiff of a fair and equitable record. Defendant therefore shows that any error was harmless.

In sum, plaintiff did not show that the error was material or that a causal nexus

---

**3.** This court recognizes the difficulty plaintiff faces in establishing its case where the deliberations of the selection boards are confidential. In several cases, however, the Court of Claims has recognized a *prima facie* showing of causation by plaintiff. *Yee v. United States,* 206 Ct.Cl. 388, 512 F.2d 1383 (1975). In *Yee,* the Air Force discharged plaintiff. Approximately five years later the Air Force Board for Correction of Military Records (AFBCMR) recommended his reinstatement. The Assistant Secretary of the Service approved the reinstatement. Just four months after reinstatement, the selection board refused to promote plaintiff. Only one Officer Effectiveness Report (OER) addressed plaintiff's performance as Captain and his record contained no adequate explanation of the 5–year gap in his career. In view of the inadequate explanation of the gap in plaintiff's selection record, the Court of Claims held that plaintiff did not receive proper consideration by the selection board. The court concluded that plaintiff's record did not fairly portray his service in the military. The AFBCMR acted arbitrarily and capriciously in not taking sufficient steps to grant plaintiff thorough and fitting relief. In this case, however, no "gap" exists in plaintiff's record. During the period in question plaintiff received numerous fitness reports. His record before the FY 1983 and 1984 selection boards accurately reflected the nature of his military service.

existed. The error did not substantially influence the selection board's decision to deny plaintiff's promotions. Thus, the decision of the BCNR denying plaintiff's relief was not arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence.

### Lack of Relevant Recent Sea Duty Claim

■ When reviewing a BCNR decision under a substantial evidence standard, this court must take into account the weight of countervailing evidence to ascertain whether the finder of fact reached a reasonable conclusion. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). However, the court cannot substitute its own judgment for the BCNR's if reasonable minds could differ. *Sanders*, 594 F.2d at 804.

Plaintiff claims that the FY 1984 selection board rejected his promotion bid due to a lack of relevant recent sea duty. Plaintiff believes this lack of sea duty directly resulted from the illegal 1975 fitness report which remained in his record over a six-year period. Plaintiff contends that this continuing injustice warranted further correction by the BCNR. To prevail, plaintiff must show both that the adverse fitness report caused his lack of sea duty and that the lack of sea duty caused his promotion pass overs. *Hary*, 618 F.2d at 704.

The BCNR concluded, however, that it was unlikely plaintiff would have received additional sea duty assignments even if he had never received the adverse 1975 fitness report. The BCNR identified a number of fitness reports issued prior to the adverse fitness report as the basis for its finding.

The BCNR's decision stated in pertinent part:

[I]n addition to the removed report, you (plaintiff) received two other reports for your department head tour aboard the USS OKINAWA, covering 11 December 1973 to 30 April 1974 and 1 May 1974 to 29 November 1974; that you submitted a rebuttal to each of these reports; and that the second report includes the following narrative: "but sometimes demonstrates a weakness in his (your) ability to harmoniously (sic) direct the activities of others." The Board also noted that your report for 7 June 1962 to 28 February 1963, aboard the USS EVANS, stated that "At other times however the lethargic attitudes displayed by (you) are reflected in the performance of his (your) division." In addition, the Board observed that your report for 7 August 1965 to 7 March 1966 stated that you were "sometimes impatient with slower subordinates" that you were "occasionally argumentative" and that "his (your) criticism was not always constructive."

Plaintiff contends that the Board lacked substantial evidence to reach this conclusion. Plaintiff argues that his overall record of fine service substantially outweighs the isolated inadequacies cited by the BCNR. Indeed many of plaintiff's fitness reports referred to by the Board contained glowing comments regarding his performance. Many reports highly recommended plaintiff for promotion.[4]

While the record shows that plaintiff provided fine service as a Naval officer, the BCNR had substantial evidence to conclude that it was unlikely plaintiff would have received sea duty despite the 1975 fitness report. The finder of fact reached a rea-

---

4. Plaintiff also refers to numerous signed statements from his fellow officers and other documents related to his performance on the USS OKINAWA which he submitted to the Board in support of his petition. The BCNR makes no mention of these statements in its final decision. It should be noted, however, that although these statements portray plaintiff in a positive light, there are a number of digressions. For example:

In the stressed-encounter situation he presents a highly egocentric and mildly introverted

image which seems out of character with his normal communication pattern.... [H]e will lapse into verbal crutches such as the trite or profane phrase. These communications characteristics present an image of insensitivity on his part to his surroundings and to those in his company.... Some persons no doubt turn off completely to these communications and others probably react with hostility or disgust.

Plaintiff's Reply, No. 732–88C, filed Aug. 14, 1989, Appendix, at 7.

sonable conclusion. Plaintiff contended during oral argument that the BCNR had to reach too far back in his record to come up with evidence to support its conclusions. This argument does not take into account the two fitness reports issued by Captain Salin just prior to the adverse fitness report. The second of these reports stated that plaintiff "sometimes demonstrates a weakness in his [your] ability to harmoniously [sic] direct the activities of others."

Plaintiff further contends that the Board lacked substantial evidence because the adverse statements in plaintiff's record cited by the Board did not block plaintiff's previous promotions to lieutenant (j.g.), lieutenant, and lieutenant commander. According to plaintiff, these references had no apparent effect on his ability to receive sea duty assignments. This argument, however, fails to recognize that the qualities necessary for promotion at lower grades are undoubtedly different from those required to obtain a higher grade.

Even if plaintiff somehow could demonstrate that he would have received sea duty absent the 1975 fitness report, he still would have to show some connection between this lack of recent sea duty and his FY 1983 and 1984 promotion pass overs. To establish this connection, plaintiff provides a July 6, 1984 affidavit signed by William H. Austin. The affidavit states:

> In approximately the early part of June, 1983 I heard the Detailer of then Lieutenant Commander John B. King tell him that in reviewing Mr. King's records, he believed that the most probable reason he had not been promoted to Commander by the last Selection Board was due to the lack of relevant recent sea duty.

Plaintiff also submitted a letter dated March 28, 1977 from the Head of the Navy's Lieutenant Commander Assignment Section to Senior Lieutenant Commanders which informed previously non-selected officers:

> Don't expect a sea assignment unless you have a "one of a kind" skill that I need at sea. I have too many younger LCDR's who have to get to sea in grade,

for the first time, to open any billets to the non-select officers.

Sea duty, however, is only one of a number of factors considered by the selection boards. In the 1987 advisory opinion provided to the BCNR, the Head Surface Warfare Lieutenant Commander Assignment Branch indicated that lack of sea duty can be a factor in promotion opportunities. The opinion also emphasized that department head performance is a major criterion for promotion. Plaintiff's performance in this area, without considering the adverse fitness report, probably would have excluded executive officer screening and promotion to commander. Furthermore, in another advisory opinion submitted to the BCNR on February 23, 1988 from the Officer Promotion and Enlisted Advancement Division, the Navy states that "his (plaintiff's) argument about not being detailed to sea duty is not particularly relevant to his failure of selection."

The selection board also considers the competitiveness of a particular candidate for promotion in relation to other officers in the particular selection pool. In the 1988 advisory opinion, the Navy noted that "even had the references to the failure not been in his record, I do not consider his record to be sufficiently competitive with those of his peers...."

In sum, the BCNR had substantial evidence that plaintiff probably would not have received sea duty even absent the 1975 adverse fitness report. The court finds only a weak connection between plaintiff's lack of sea duty and his failure to attain promotion. Many factors affect an officer's promotion opportunities and lack of sea duty is but one of them.

## CONCLUSION

The decision of the BCNR denying plaintiff's relief was not arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence. Plaintiff did not show that the improper record references to previous pass overs were a material error. Plaintiff also failed to show a causal connection between the purported error and his non-selection for promotion.

Defendant demonstrated that the improper references were harmless.

With respect to plaintiff's second claim, this court finds that the BCNR had substantial evidence to conclude that plaintiff probably would not have received sea duty even absent the 1975 fitness report.

Therefore, this court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment. The Clerk of the court is directed to enter judgment dismissing the complaint.

No costs.